UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>RONEY LOUIS HARRIS<br><br>Debtor | Chapter 13<br>Case No. 17-31042-CJP |

**MEMORANDUM OF DECISION REGARDING MOTION FOR
RELIEF FROM THE AUTOMATIC STAY**

I.    INTRODUCTION

Before the Court is the *Motion for Relief from the Automatic Stay* (Doc. No. 110) (the "Motion") filed by HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-A, Mortgage-Backed Certificates, Series 2006-A and/or its successors and assigns (collectively, "HSBC"), as supplemented by briefs with supporting documents filed at the direction of the Court by HSBC at Doc. Nos. 145 and 221 (the "First and Second Supplemental Briefs," respectively), and the oppositions and responses thereto (Doc. Nos. 121, 141, 222, 223, and 244) (collectively, the "Objections") filed *pro se* by the debtor Roney Louis Harris (the "Debtor"). By its Motion, HSBC seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)[1] and Fed. R. Bankr. R. 4001 to permit it to enforce its rights under a mortgage with respect to property located at 83 Greentree Drive, Glastonbury, Connecticut 06033 (the "Property"), including prosecution of a contested judicial foreclosure action pending in the

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

1

United States District Court for the District of Connecticut (Case No. 3:17-cv-00382-AVC) (the "Judicial Foreclosure Action"), which matter was previously removed from the Superior Court for the Judicial District of Hartford (the "Connecticut Superior Court") (Case No. HHD-CV17-6075654-S) by the Debtor. After consideration of the Motion, First and Second Supplemental Briefs, Objections, and all relevant documents, affidavits, and pleadings filed in the above-captioned case, together with exhibits thereto, the arguments of all parties on the record at the hearing held regarding the Motion (the "Hearing"), and taking judicial notice[2] of the dockets in (i) the Debtor's 2008 Chapter 7 bankruptcy case (Case No. 08-31056) (Boroff, J.) and related adversary proceedings (the "2008 Bankruptcy"), and appeals taken from orders in the 2008 Bankruptcy (ii) the pending Judicial Foreclosure Action, and (iii) the quiet title action in the Connecticut Superior Court styled *Roney L. Harris v. HSBC Bank USA, National Association as Trustee* (Case No. HHD-CV 12-5035927-S) ("Quiet Title Action"), which HSBC only recently referenced in the context of the Second Supplemental Brief, the Court hereby overrules the Objections and grants the Motion for the reasons set forth below.

II.  BACKGROUND

For much of the past decade, the Debtor has been a debtor in pending bankruptcy cases, and the parties have had a lengthy history of litigation in both this Court and various other state

---

[2] *See* Fed. R. Evid. 201 (governing judicial notice of an adjudicative fact); Fed. R. Bankr. P. 9017 (making applicable Fed. R. Evid. 201 to cases under the Bankruptcy Code); *see also Maher v. Hyde*, 272 F.3d 83, 86 n.3 (1st Cir. 2001) (quoting *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990)) (determining "'[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand'"); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 6 (1st Cir. 1999) (holding "[t]he bankruptcy court appropriately took judicial notice of its own docket").

and federal proceedings with respect to HSBC's efforts to enforce any rights it may have with respect to the mortgage granted by the Debtor against the Property.

In February 2006, the Debtor granted a mortgage with respect to the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"),[3] acting solely as nominee for Fremont Investment & Loan (the "Mortgage"). The Mortgage is dated February 27, 2006, and is recorded with the Office of the Town Clerk of Glastonbury, Connecticut (the "Glastonbury Town Clerk Office") in Volume 2307, Page 200. *See* Mortg. 1 (Mot., Ex. A). The Mortgage states that it secures a promissory note of even date given by the Debtor to Fremont Investment & Loan in the original principal amount of $508,000.00 (the "Note"). *See* Note (Mot., Ex. B). In the Motion, HSBC alleged that no payment had been made on account of the debt secured by the Mortgage since 2007.

---

[3] As explained by the Appellate Court of Connecticut in *Chase Home Finance, LLC v. Fequiere*, MERS functions as follows:

> MERS does not originate, lend, service, or invest in home mortgage loans. Instead, MERS acts as the nominal mortgagee for the loans owned by its members. The MERS system is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located .
> . . .
>
> The benefit of naming MERS as the nominal mortgagee of record is that when the member transfers an interest in a mortgage loan to another MERS member, MERS privately tracks the assignment within its system but remains the mortgagee of record. According to MERS, this system saves lenders time and money, and reduces paperwork, by eliminating the need to prepare and record assignments when trading loans . . . .
>
> If, on the other hand, a MERS member transfers an interest in a mortgage loan to a non-MERS member, MERS no longer acts as the mortgagee of record and an assignment of the security instrument to the non-MERS member is drafted, executed, and typically recorded in the local land recording office.

*Chase Home Fin., LLC v. Fequiere*, 989 A.2d 606, 608 n. 2 (Conn. App. Ct. 2010) (internal citations and quotations omitted).

3

The copy of the Note submitted by HSBC shows a single endorsement in blank alleged to have been executed by a Vice President of Freemont Investment & Loan. *See* Note at 4. The Mortgage was originally granted to MERS "as a nominee for [Fremont Investment & Loan and its] successors and assigns[,]" *see* Mortg. 1, and appears to have been assigned thereafter by MERS acting as nominee for Fremont Investment & Loan to HSBC by an Assignment of Mortgage/Deed of Trust dated October 22, 2008 and recorded with the Glastonbury Town Clerk Office in Volume 2603, Page 260 (the "Assignment"). *See* Oct. 22, 2008 Assignment (Mot., Ex. C). In addition, there appears to be another assignment dated June 27, 2008, predating the Assignment and recorded with the Glastonbury Town Clerk Office in Volume 2574, Page 112, which is from MERS, acting as nominee for Fremont Investment & Loan, to HSBC Bank USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of May 1, 2006, Fremont Home Loan Trust-2006-A (the "June 2008 Assignment"). The June 2008 Assignment is referenced in HSBC's complaint commencing the Judicial Foreclosure Action attached as Exhibit E to the Motion.

On July 21, 2008, the Debtor filed the petition for relief commencing his 2008 Bankruptcy. The Court entered a discharge of the Debtor in that case on December 30, 2008. In the 2008 Bankruptcy, HSBC filed three Motions for Relief from the Automatic Stay: 2008 Bankr. Doc. No. 70 filed on February 2, 2009, 2008 Bankr. Doc. No. 99 filed on August 28, 2009, and 2008 Bankr. Doc. No. 132 filed on August 16, 2016. All of those Motions were ultimately withdrawn by HSBC, *see* 2008 Bankr. Doc. Nos. 97 and 109, and/or deemed moot by the Court, *see* orders at 2008 Bankr. Doc. Nos. at 111, 112, and 133, respectively. In connection with his prior bankruptcy proceeding, the Debtor also commenced Adversary Proceeding Nos. 09-03008 and 09-03052 against HSBC. The lengthy travels of those matters and other litigation

are summarized in (i) the decision issued by the United States District Court for the District of Massachusetts in *Harris v. HSBC Bank USA, N.A.*, No. 09-CV-30215-MAP, 2010 WL 3860603, at *1 (D. Mass. Sept. 28, 2010) ("*Harris I*"), reversing and remanding the decision entered by the Court in *In re Harris*, No. 08-31056-HJB, 2009 WL 3348209, at *1 (Bankr. D. Mass. Oct. 15, 2009) and directing that the Bankruptcy Court consider the standing of HSBC, and (ii) the decision ultimately entered by the Court on remand in *In re Harris*, 450 B.R. 324 (Bankr. D. Mass. 2011) ("*Harris II*").

In *Harris II*, the Court summarized the procedural history as follows:

> After noting the procedural confusion caused by the Debtor in this case, the District Court found that this Court had in fact erred in failing to connect the Debtor's request for reconsideration filed in the Second Adversary Proceeding to the Stay Relief Order filed in the Main Case[]. The District Court held that, although it was filed in the Second Adversary Proceeding, the Debtor's Second Motion for Reconsideration was actually an attempt to seek reconsideration of the October 29 order in the Main Case granting the Second Motion for Relief from Stay. Thus, the District Court stated that it would "treat th[e] appeal as a timely challenge to an order denying reconsideration of an order to lift the automatic bankruptcy stay." The District Court went on to note that since this Court had declined to reach the issue of standing when it dismissed the First Adversary Proceeding, the Debtor was not precluded from attacking HSBC's standing with respect to the Second Motion for Relief from Stay. Furthermore, the District Court, noting that HSBC had not yet adequately demonstrated its standing to prosecute the Second Motion for Relief from Stay, reversed this Court's denial of reconsideration of that issue and remanded for further consideration.

450 B.R. at 332 (citations omitted). With respect to HSBC's standing, Judge Boroff determined that the issue was no longer before the Court because the motion seeking relief from the automatic stay had been withdrawn. *Id*. at 332–33 (ruling that "because the underlying Second Motion for Relief from Stay had been withdrawn, the Court no longer had jurisdiction to decide any remaining contests between the Debtor and HSBC or others with respect to the Note or

5

Mortgage"). The Court concluded that "HSBC may have been the proper party to bring such a motion or it may not. That issue has not been decided by this Court." *Id*. at 335 n.47.

Prior to the commencement of the Debtor's current bankruptcy case on December 13, 2017 (the "Petition Date"), HSBC had filed the Judicial Foreclosure Action in the Connecticut Superior Court, and the Debtor removed the matter to the Connecticut District Court. *See* Mot., Ex. D. On or about June 2, 2017, the Debtor filed a motion to dismiss the Judicial Foreclosure Action for lack of subject matter jurisdiction, making many of the same arguments raised in his Objection regarding standing (the "Dismissal Motion"). *See* 1st Suppl. Br., Ex. 7. On October 6, 2017, the District Court entered an order denying the Dismissal Motion because the Debtor appears to have failed to properly serve HSBC. *See* D. Conn. Doc. No. 17 (Mot., Ex. D). The Judicial Foreclosure Action has been stayed as a result of this bankruptcy case. *See id*. at Doc. No. 18.

On March 19, 2018, HSBC filed the Motion requesting that HSBC be allowed to enforce any and all applicable rights and remedies against the Property,[4] including pursuit of the Judicial Foreclosure Action. The Debtor does not appear to dispute that he executed and delivered the Note and Mortgage or that he has not made any payments since 2007 with respect to the indebtedness secured by the Note. The Debtor's opposition is based on his contentions that (i)

---

[4] While HSBC states in the Motion that it seeks to exercise "any and all applicable rights and remedies against Roney Louis Harris (a/k/a Roney Harris)[,]" Mot. 1, HSBC conceded in the context of the First Supplemental Brief that that it may not seek to collect any amounts from the Debtor because of the 2008 Bankruptcy discharge, but that it solely seeks to exercise its *in rem* rights and remedies under the Mortgage, 1st Suppl. Br. 6. The discharge injunction under § 524 only prohibits the collection of a discharged debt as to personal liability of the debtor, however, it "does not enjoin a secured creditor from recovering on valid prepetition liens." *Canning v. Beneficial Maine, Inc. (In re Canning)*, 706 F.3d 64, 69 (1st Cir. 2013); *see also Best v. Nationstar Mortg. LLC (In re Best)*, 540 B.R. 1, 6 (B.A.P. 1st Cir. 2015) (finding that the Chapter 7 discharge "did not . . . convert [the] secured debt into an unsecured debt, nor did it render [the Mortgage] invalid."). HSBC may not seek to collect any amounts from the Debtor because of the discharge, but HBSC may exercise its *in rem* rights and remedies under the Mortgage against the Property.

HSBC does not have standing to enforce the Note and Mortgage because neither was properly assigned to HSBC, (ii) the issue of standing has not been finally determined by a court of competent jurisdiction, and (iii) the debt secured by the Mortgage was discharged in the 2008 Bankruptcy. After a hearing conducted on the Motion, the Court requested additional briefing on several issues. The Court also converted the Debtor's Chapter 7 to Chapter 13 on the Debtor's motion to convert. *See* Ord., Doc. No. 131.

Upon consideration of the additional briefing and in view of the existing record, the Court issued a preliminary order regarding the Motion (the "Preliminary Order"), directing HSBC to file further additional briefing to address "(i) the applicability of Connecticut law to its claim of standing, (ii) the June 2008 Assignment, and (iii) whether HSBC is presently in possession of the Note and how it came to be in possession" and providing a time within which the Debtor could respond. Prelim. Ord., Doc. No. 214. In preparing the Second Supplemental Brief to address Connecticut state law issues raised in the Preliminary Order, counsel for HSBC became aware that, on January 9, 2014, the Debtor had commenced the Quiet Title Action regarding the Property, *see* 2nd Suppl. Br., Exs. 2–4, and that the Connecticut Superior Court had entered summary judgment in favor of HSBC in that proceeding (the "Summary Judgment Decision"), *see* Summ. J Decision (2nd Suppl. Br., Ex. 3). Subsequently, the Connecticut Appellate Court affirmed the Summary Judgment Decision. *See* Per Curiam Decision (2nd Suppl. Br., Ex. 4).

In his supplemental responses, the Debtor does not dispute the accuracy of the docket in the Quiet Title Action or that the copies of the Summary Judgment Decision and appellate decision attached as Exhibits 3 and 4 to the Second Supplemental Brief are true and accurate copies of decisions issued relating to that matter. *See* Doc. Nos. 222, 223, 244. Rather, the

7

Debtor, who commenced the action, contends that the orders entered by the Connecticut state court are void because that court lacked jurisdiction and authority to grant relief to HBSC. *See* Doc. No. 223, ¶ 20. The Debtor also argues that the orders entered by the state court denying his discovery requests and overruling his objections impacted his due process rights. *See* Doc. No. 244, 26.

Additionally, with respect to the supplemental briefing on the Note possession issue, HSBC submitted the declaration of Kevin Flannigan (the "Declaration"), a Senior Loan Analyst of Ocwen Financial Corporation, the indirect corporate parent of Ocwen Loan Servicing, LLC (the "Servicer"), the attorney-in-fact to HSBC engaged to service the Note and Mortgage. *See* Decl. ¶ 2 (2nd Suppl. Br., Ex. 1). In the Declaration, the affiant states that the Servicer is in possession of the Note and provides certain details as to how it came to be in possession of the Note. *See* Decl. ¶¶ 6–12.

III.   LEGAL STANDARDS

　　A.   Stay Relief

Subject to certain exceptions not applicable to the present matter, § 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy proceeding stays the commencement or continuation of non-bankruptcy judicial proceedings against the debtor. 11 U.S.C. § 362(a). "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause." *Id*. at § 362(d)(1). "The Bankruptcy Code does not define 'cause' for purposes of 11 U.S.C. § 362(d)(1), requiring courts to determine cause on a case-by-case basis." *In re Podmostka*, 527 B.R. 51, 54 (Bankr. D. Mass. 2015). Under § 362(d)(2), the Court shall grant relief from the automatic stay if a movant can demonstrate that the Debtor lacks equity in

in the property that is the subject of the motion and that property is not necessary for an effective reorganization of the debtor. Under § 362(g), in any hearing under subsection (d) or (e) of this section concerning relief from the stay "(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g).

In order to have standing to file a motion for relief from stay in a bankruptcy case, a movant must be a party in interest. *See In re Maisel*, 378 B.R. 19, 21 (Bankr. D. Mass. 2007) (holding that the "plain language of section 362 of the Bankruptcy Code requires that one be a 'party in interest' to seek relief from stay"). "Generally, the real party in interest is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *See In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (quotations and citations omitted). A mortgagee with a power of sale is a party in interest by virtue of having a substantive right to enforce the power of sale and the other terms of the mortgage. *See id.* (applying Massachusetts law).

The United States Court of Appeals for the First Circuit has instructed that the test for determining standing to bring a motion for stay relief is "whether a creditor has a colorable claim to property of the estate." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994). In determining whether a creditor has a colorable claim and therefore standing to seek relief from the automatic stay, a bankruptcy court need not fully adjudicate the merits of the creditor's claims as "the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims," but rather is a "summary proceeding." *Id*. at 33. "As a matter of law, the only issue properly and necessarily before a bankruptcy court during relief from stay proceedings is whether the movant creditor has a

9

colorable claim; thus, a decision to lift the stay is not an adjudication of the validity or avoidability of the claim, but only a determination that the creditor's claim is sufficiently plausible to allow its prosecution elsewhere." *Id*. at 34. To obtain relief from the stay, a movant is required to "show cause for relief, in addition to its colorable claim on property of the estate." *U.S. v. Fleet Bank of Mass. (In re Calore Express Co.), Inc.*, 288 F.3d 22, 36 (1st Cir. 2002).

As to whether cause exists to lift the automatic stay to permit the continuation of pending litigation, Courts often also consider the following factors:

> (1) [whether] [a]ny "great prejudice" to either the bankrupt estate or the debtor will result from continuation of a civil suit;
>
> (2) [whether] the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor; and
>
> (3) [whether] the creditor has a probability of prevailing on the merits of his case.

*In re Hurvitz*, 554 B.R. 35, 40 (Bankr. D. Mass. 2016) (quoting *In re Haines*, 309 B.R. 668, 674 (Bankr. D. Mass. 2004)). "'Suspension of [the automatic stay] may be consonant with the purposes of the Bankruptcy Act when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems.'" *Haines*, 309 B.R. at 674 (quoting *Int'l Bus. Machs. v. Fernstrom Storage and Van Co. (In re Fernstrom Storage and Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991)).

B. *Rooker-Feldman* Doctrine

The *Rooker–Feldman* doctrine[5] prohibits lower federal courts, including bankruptcy courts, from reviewing final state court judgments. *See, e.g., New Eng. Power & Marine, Inc. v.*

---

[5] The doctrine derives from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923) (holding that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the U.S. Supreme Court and is beyond the original jurisdiction of federal district courts) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983) (finding that the *Rooker* jurisdictional bar extends to claims that are "inextricably intertwined" with those a state court has already decided). The Supreme Court has subsequently

10

*Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.)*, 292 F.3d 61 (1st Cir. 2002); *Schwartz v. Schwartz (In re Schwartz)*, 409 B.R. 240, 246–47 (B.A.P. 1st Cir. 2008). "[*Rooker–Feldman*] bars jurisdiction whenever parties who lost in state court seek review and rejection of that judgment in federal court." *Miller v. Nichols*, 586 F.3d 53, 58 (1st Cir. 2009) (internal citations omitted). The Bankruptcy Appellate Panel for the First Circuit has described the application of the doctrine by courts in the First Circuit as follows:

> Courts in the First Circuit interpreting the doctrine have held that it forecloses lower federal court jurisdiction where the issues in the case are "inextricably intertwined" with questions previously adjudicated by a state court. A federal claim is "inextricably intertwined" with state court claims if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Therefore, the *Rooker–Feldman* doctrine precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding.

*In re Schwartz*, 409 B.R. at 247 (internal citations and quotations omitted).

IV.    DISCUSSION

    A.    Applicability of *Rooker-Feldman* with Respect to the Decision in the Quiet Title Action

The Connecticut Superior Court entered summary judgment in favor of HSBC in the Quiet Title Action. *See* Summ. J. Decision 9 (2nd Suppl. Br., Ex. 3). In the Summary Judgment Decision, the Superior Court held that "the affidavit of the defendant supplies all the information necessary to demonstrate its standing to prosecute a foreclosure action." *See id.* at 6. It is uncontested that the Summary Judgment Decision entered on June 3, 2014 is final, the judgment having been affirmed by the Connecticut Appellate Court on June 16, 2015, and no further

---

explained that the *Rooker–Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

11

review was sought. The Debtor has not asserted that the material facts associated with the Note or Mortgage have changed since the date of that judgment. The Debtor nonetheless characterizes the conclusions drawn by the Connecticut Superior Court in the Quiet Title Action as illegitimate because the court "denied Debtor's discovery requests, overruled his objections, and allowed the party that was claiming authority to foreclose to 'prove' its case by using dubious legal 'presumptions' instead of facts, most of which were denied by the Debtor . . . effectively abus[ing] Debtor's rights to due process." Obj. to 2nd Suppl. Br. 26 (Doc. No. 244).

Despite the Debtor's dissatisfaction with the decision in the Quiet Title Action, this Court may not act as an appellate court sitting in review of state court judgments. *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 403 (B.A.P. 1st Cir. 2004) (collecting cases and holding that "under the *Rooker–Feldman* doctrine, a bankruptcy court, as a lower federal court, cannot review the final judgment of a state court"). Such appellate jurisdiction to review a state court judgment is reserved for the Supreme Court of the United States. *See* 28 U.S.C. § 1257; *Exxon Mobil Corp.* 544 U.S. at 283. Any determination by this Court that HBSC does not have standing to foreclose the Mortgage would directly conflict with the Summary Judgment Decision and would be precluded by application of the *Rooker–Feldman* doctrine. *See, e.g., In re Schwartz*, 409 B.R. at 247. As such, because the Summary Judgment Decision cannot be reviewed by this Court and the decision determined that HSBC had standing to prosecute a foreclosure action under Connecticut law, HSBC has demonstrated standing with respect to the Motion.

  B.  <u>Alternative Basis for Standing as Note Holder</u>

Even if the *Rooker-Feldman* doctrine was not applicable, HSBC has demonstrated that it has a colorable claim that it is the holder of the Note with the right to foreclose the Mortgage under Connecticut law. As such, it has standing to bring the Motion. Under Connecticut law,

12

HSBC's standing to enforce the Note is governed by the provisions of the Uniform Commercial Code as adopted in Conn. Gen. Stat. §§ 42a–1–101 *et seq*. Under these statutes, a "holder" of an instrument, or someone who has the rights of a holder, is entitled to enforce the instrument. Conn. Gen. Stat. § 42a–3–301. The "holder" is the person or entity in possession of the instrument if the instrument is payable to bearer. *Id*. at § 42a–1–201(b)(21)(A). When an instrument is endorsed[6] in blank, it "becomes payable to bearer and may be negotiated by transfer of possession alone . . . . " *Id*. at § 42a–3–205(b). A party in possession of a note endorsed in blank is entitled to enforce the note as the holder. *See RMS Residential Properties, LLC v. Miller*, 32 A.3d 307, 313-14 (Conn. 2011) (quoting *Chase Home Fin., LLC*, 989 A.2d at 606) (determining "a holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under § 49–17" and finding that "'[RMS], by way of its possession of an instrument payable to [the] bearer, is a valid holder of the instrument and, therefore, is entitled to enforce it'")) *overruled in part on other grounds by J.E. Robert Co. v. Signature Properties*, LLC, 71 A.3d 492, 502 n. 18 (Conn. 2013).

The Note was endorsed in blank by Fremont Investment & Loan at a time when it is undisputed that Fremont was an active entity, and, therefore, is payable to bearer. HSBC, by way of its agent's asserted possession of an instrument payable to bearer, is presumed to be a valid holder of the instrument and, therefore, entitled to enforce it. *See, e.g., Chase Home Fin., LLC*, 989 A.2d at 611; *Ninth RMA Partners, L.P. v. Krass*, 746 A.2d 826, 831 (Conn. App. Ct. 2010). As stated by the Connecticut Appellate Court in *Chase Home Finance, LLC*:

> Furthermore, [t]he possession by the bearer of a note indorsed in blank imports prima facie that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching

---

[6] The Court uses the same spelling of "endorsement" as set forth in Conn. Gen. Stat. §§ 42a–3–205 entitled "Special endorsement. Blank endorsement. Anomalous endorsement," but notes that the Uniform Commercial Code Comments related to that statute utilize the term "indorsement" interchangeably with "endorsement."

13

> its validity. The production of the note establishes his case prima facie against the makers and he may rest there. It [is] for the [makers] to set up and prove the facts which limit or change the [bearer's] rights.

989 A.2d at 611 (internal quotations and citations omitted).

HSBC has submitted the Servicer's Declaration in which the affiant states that the Servicer is in possession of the Note and provides details as to how it came to be in possession of the Note. *See* Decl. ¶¶ 6–12. Even assuming the Assignment of the Mortgage to HSBC by MERS was invalid because of the prior June 2008 Assignment or another reason as asserted by the Debtor, HSBC is nonetheless entitled to enforce the Mortgage if it can demonstrate that it is the holder of the Note. *See* Conn. Gen. Stat. § 49–17. "General Statutes § 49–17 permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him . . . The statute codifies the common-law principle of long standing that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage . . . Our legislature, by adopting § 49–17, has provide[d] an avenue for the holder of the note to foreclose on the property when the mortgage has not been assigned to him." *Chase Home Fin., LLC*, 989 A.2d at 610-11.

While the Debtor asserts infirmities with respect to the assignments, the Debtor does not provide a sufficient basis to refute that HSBC is the holder of the Note. *See Countrywide Home Loans Servicing, LP v. Creed*, 75 A.3d 38, 44, 48 (Conn. App. Ct. 2013) (concluding that "the defendant failed to produce any evidence to rebut the presumption that the plaintiff was the holder of the note" and given "[t]he plaintiff presented the original note, with an accompanying affidavit detailing its transfer from Countrywide[, t]he plaintiff was entitled to a rebuttable presumption that, as the holder of the note endorsed in blank, it had standing"); *Chase Home Fin., LLC*, 989 A.2d at 611(in rejecting defendant's claim that plaintiff was not proper party to

bring foreclosure action, court stated that "[t]he defendant ha[d] failed to offer any evidence to counter the plaintiff's claim that it [was] a bona fide holder of the promissory note secured by the mortgage on the defendant's property," that "the plaintiff offered a copy of the promissory note that was endorsed in blank," and that it was "undisputed that the plaintiff [was] also in possession of the note"). HSBC has provided evidence that it, or its agent, is in possession of the Note and has submitted a copy of the Note with a blank endorsement.

Additionally, HSBC has proffered evidence that the Mortgage was assigned by MERS to HSBC in 2008 pursuant to two assignments, but reiterates that the assignments are irrelevant as to the analysis of whether HSBC is the holder of the Note. HSBC argues that the Mortgage was already securitized and pooled into the Fremont Home Loan Trust 2006-A in accordance with the relevant Pooling and Servicing Agreement dated as of May 1, 2006, a copy of which is attached as Exhibit C to the Declaration. *See* Decl. ¶ 7; Ex. C. At that time, Wells Fargo Bank, N.A. served as trust administrator and HSBC served as trustee of the pooling and servicing agreement. *Id.* The Debtor argues that the assignments of the mortgage to HSBC were not valid because Fremont Investment & Loan "ceased to exist" after its own liquidation proceeding and could not have authorized any assignment. The Court need not consider that argument because, as the current holder of a negotiable instrument secured by the Mortgage, HSBC has a colorable claim that it has a statutory right to foreclose the mortgage under Connecticut law. *See* Conn. Gen. Stat. § 49–17; *Equity One, Inc. v. Shivers*, 74 A.3d 1225, 1235 (Conn. 2013); *Citimortgage, Inc. v. Gaudiano*, 68 A.3d 101, 104 (Conn. App. Ct. 2013); *Creed*, 75 A.3d at 44 (affirming that a foreclosing mortgagee had standing where in possession of note, notwithstanding an assignment by MERS that purported to also assign a promissory note of which it was not the holder).

While the "Debtor opines that the Court should be suspicious of anything proffered by a foreclosing party when there is an alleged 'REMIC[ ]trust' involved[,]" the Debtor's statement that there is "no admissible evidence that shows a valid conveyance of the purported transaction documents into the subject Trust" is unavailing. Obj. to 2nd Suppl. Br. 2 (Doc. No. 244). A motion for relief from stay is a summary proceeding and HSBC has met its burden to establish that it has standing with respect to the Motion even if the *Rooker-Feldman* doctrine did not compel that ruling.

    C.    <u>Existence of Cause Warranting Relief from the Automatic Stay</u>

In the Motion, HSBC alleges that, based on the Debtor's statement of value in his Schedules, the fair market value of the Property is $200,000 and the liquidation value is $186,588. As of the date of the Motion, HSBC alleges that the balance due on the Note is $1,141,726.61. While recognizing that it may only pursue its *in rem* rights and remedies under the Mortgage, HSBC asserts that the Debtor has no equity in the Property and the property is not necessary for an effective reorganization. HSBC also alleges that the Debtor has not made any payment in respect of the note since March of 2007.[7] The Debtor disputes that HSBC may enforce the Note and Mortgage, appearing to argue, without a valid basis, that a discharge extinguishes a creditor's *in rem* as well as *in personam* rights. *See e.g., Canning*, 706 F.3d at 69; *In re Best*, 540 B.R. at 6.

The laws of the State of Connecticut require a judicial process prior to any foreclosure. The Judicial Foreclosure Action is pending with the Connecticut District Court. HSBC has demonstrated a colorable claim that would entitle it to relief from the automatic stay under § 362(d). Because consideration of a motion for relief from stay is a summary proceeding, as

---

[7] The Summary Judgment Decision states that the Debtor's "last payment was for the installment due on June 1, 2007." Summ. J. Decision 5.

16

discussed above, and relief from stay is sought in this matter to continue litigation in another forum, it is also appropriate for this Court to consider the availability of complete relief to the parties in the alternate forum and judicial economy in determining whether "cause" exists under § 362(d) in the context of prejudice to the parties. As the Debtor will have an opportunity to finally litigate any issues relating to the Note and Mortgage in the pending Judicial Foreclosure Action that may remain unresolved after the Quiet Title Action, this Court also finds that the U.S. District Court is an appropriate forum that may grant final relief to the parties and judicial economy would be served if all issues relating to foreclosure of the Mortgage were determined in that forum.

## V.    CONCLUSION

For the foregoing reasons and in view of the existing record, the Motion is granted. HSBC is granted relief from the automatic stay provided by § 362(a), for itself and any of its successors or assigns, to litigate to conclusion the Judicial Foreclosure Action and any related appeals, conduct a foreclosure auction and sale as may be determined in connection with that action, and obtain possession of the Property or evict the Debtor as may be consistent with a judgment in the Judicial Foreclosure Action and applicable law. HSBC's request to waive the fourteen day stay is denied and the stay remains in effect with respect to this Order in accordance with Fed. R. Bankr. P. 4001(a)(3). A separate order shall enter in accordance with this decision. Entered this 21st day of December, 2018.

By the Court

_____
Christopher J. Panos
United States Bankruptcy Judge